IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA     )
                             )      CRIMINAL ACTION NO.
     v.                      )         2:20cr102-MHT
                             )            (WO)
KEYIWAN RECHARD HUMPHREY     )

OPINION AND ORDER

This criminal cause is before the court on the question whether defendant Keyiwan Rechard Humphrey has the mental capacity to stand trial--that is, whether he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).

The parties' experts agree that Humphrey is suffering from an intellectual disability.  However, they disagree about whether Humphrey is currently competent to stand trial.  Based on the evidence in the record and the testimony presented at a competency

hearing on March 17, 2021, the court concludes by a preponderance of the evidence that Humphrey is not mentally competent. The court will therefore commit him to the custody of the Attorney General for a reasonable period of time, not to exceed four months, for a determination of whether he will attain competency within the foreseeable future. *See* 18 U.S.C. § 4241(d)(1).

## A. Competency Determination

Humphrey is charged with bank robbery by force and violence or by intimidation in violation of 18 U.S.C. § 2113(a). Defense counsel moved for a competency determination based on her "investigation and observation" of Humphrey. Motion for Hearing for Competency Determination (Doc. 63) at 1. The government also raised concerns about Humphrey's ability to understand the proceedings.

Courts apply a two-part test to determine competency. *See Bundy v. Dugger*, 850 F.2d 1402, 1408

(11th Cir. 1988).  First, the court determines whether "the defendant suffer[s] from a clinically recognized disorder[ ]."  *Id*.  If the defendant does, then the court determines whether "that disorder render[s] the defendant incompetent."  *Id*.  For a defendant to be considered competent to stand trial, he must have both the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Humphrey has been evaluated separately by two licensed psychologists, Dr. Robert Shaffer and Dr. Kale Kirkland.  While the psychologists agree that Humphrey suffers from a mild intellectual disability, a clinically recognized disorder, they came to different conclusions about whether that disability renders him incompetent to stand trial.

Dr. Shaffer performed an evaluation at the request of defense counsel.  *See* Psychological Evaluation (Doc.

3

72-1). Based on his review of Humphrey's educational and medical documents, as well as his own administration of the Verbal IQ subtests from the Wechsler Adult Intelligence Scale (WAIS-IV), Dr. Shaffer concluded that Humphrey has a mild intellectual disability. Humphrey obtained a Verbal IQ score of just 61 on the WAIS-IV. *See id.* at 3. This was in line with his previous test results, which consistently indicated that Humphrey suffers from a mild intellectual disability. *See id.*

Humphrey also performed very poorly on the tests designed to assess his competency. Dr. Shaffer administered the Competence Assessment for Standing Trial for Defendants with Mental Retardation (CAST-MR), which was developed to test the ability of intellectually disabled individuals in the criminal justice system to assist in their own defense. Humphrey's score was consistent with those of other individuals found incompetent. He did not understand the terms 'prosecutor' or 'jury.' *See id.* Nor did he

**4**

understand what it meant to plead innocent, the concept of a plea bargain, or what a maximum and minimum sentence are.  *See id*. at 4.  He also lacked an understanding of his due-process rights and did not grasp the adversarial nature of court proceedings or the risk of self-incrimination.  *See id*.

Dr. Shaffer noted that it can be particularly difficult for individuals with an intellectual disability to understand the sorts of abstract concepts relevant to a criminal trial.  *See id*.  He also explained that, "Efforts to be compliant and to appear to understand are typical of individuals having intellectual abilities in the range of mild Intellectual Disability," and concluded that, while Humphrey would be able to adequately follow his attorney's directions, he would not actually be able to actively participate in his own defense.  *Id.*

Dr. Shaffer administered several other tests designed to determine whether Humphrey was able to comprehend and waive his *Miranda* rights.  *See Miranda*

*v. Arizona*, 384 U.S. 436 (1996). While the voluntariness of Humphrey's waiver is no longer at issue,* Dr. Shaffer testified that these tests can also be used to help evaluate Humphrey's competency. Humphrey's scores were far below average on all of the tests, even when compared to the scores of others with intellectual disabilities. *See* Psychological Evaluation (Doc. 72-1) at 5. Concerningly, he could not explain what a right was, even when prompted. *See id.* The testing also indicated that he was highly suggestible, particularly to the directives of an authority figure. *See id.* at 5-6. Humphrey is quick to try to appear as if he understands by looking for cues about what to say or how to act, but Dr. Shaffer found that he is frequently unable to actually understand or process the information presented to him. *See id.*

---

* During the competency hearing, the government agreed not to use at any eventual trial the statement at issue. Thus, the issue of Humphrey's competence to waive his *Miranda* rights is now moot. *See* Order (Doc. 130) at 1.

Dr. Kirkland performed a subsequent evaluation of Humphrey at the request of the government. *See* Mental Health Evaluation (Doc. 99-1). Dr. Kirkland conducted a clinical interview with Humphrey, during which they discussed a variety of pertinent information from Humphrey's background. He then administered a mental status examination, the Beck Depression Inventory (BDI-2), the Anxiety Self-Rating Scale, and the Wide Range Achievement Test (WRAT-4) on word reading.

Dr. Kirkland concurred with Dr. Shaffer's finding that Humphrey has a mild intellectual disability. *See id.* at 4. Humphrey obtained a score of 55 on the WRAT-4 word reading scale, which falls in the extremely low range. *See id.* Based on these results, as well as Humphrey's previous IQ testing, Dr. Kirkland found that Humphrey is mildly intellectually disabled.

Unlike Dr. Shaffer, however, Dr. Kirkland concluded that Humphrey is competent to stand trial, albeit only marginally so. *See id.* at 6. Dr. Kirkland conducted a semi-structured interview with Humphrey, which was

7

designed to assess his "knowledge of the courtroom and the trial process." *Id*. at 4.  He reported that, while Humphrey initially said that he did not know the role of the prosecutor or the jury, he eventually indicated that he recognized those individuals from court proceedings on television. *See id.* at 5.  Humphrey also struggled with the concept of a plea deal, though Dr. Kirkland found that he could understand the basics after "brief discussion and education." *Id*.  While, as stated above, Dr. Kirkland described Humphrey's ability to understand the legal proceedings against him as marginal, he ultimately found that this understanding was adequate to render Humphrey competent to stand trial. *See id.* at 5-6.

In reaching this conclusion, Dr. Kirkland emphasized Humphrey's adaptive functioning, which he identified as "higher than the measurements of his cognitive abilities." *Id*. at 5.  Humphrey has successfully held down jobs and maintained good relationships with others, which indicates that he is

generally able to function independently despite his intellectual disability. *See id.* at 2-3. However, the court finds that Humphrey's ability to complete these concrete day-to-day tasks is not indicative of whether he understands the more complex and abstract concepts involved in a criminal trial.

Dr. Kirkland also emphasized the fact that Humphrey "spontaneously began discussing his legal circumstances" during the evaluation. *Id.* at 5. This, Dr. Kirkland concluded, indicated that Humphrey understood the factual basis for his legal circumstances and grasped the difference between right and wrong. *Id*. At the competency hearing, however, Dr. Shaffer credibly suggested that this openness actually supports a finding that Humphrey is *not* competent to stand trial: While it is clear that Humphrey understood that he was in trouble, his indiscriminate sharing suggested that he did not understand the adversarial nature of the criminal

justice system or the importance of avoiding self-incrimination.

Ultimately, the court finds that the weight of the evidence supports the conclusion that Humphrey is not currently competent. The court was convinced by the results of Dr. Shaffer's psychological testing, particularly the CAST-MR test, that Humphrey does not grasp the nature of court proceedings and cannot actively participate in his own defense. While Humphrey may be able to recount factually the details of his actions leading up to his arrest, there is little evidence that he understands more general concepts like the nature of an adversarial proceeding or his due process rights.

Moreover, the court finds that there is reason to be skeptical of the 'understanding' of court proceedings Humphrey demonstrated during Dr. Kirkland's evaluation. At the competency hearing, Dr. Shaffer compellingly explained that Humphrey may engage in 'masking' behavior by looking for cues about how to

10

appear to function normally. Humphrey's test results indicate that he is particularly suggestible and inclined to agree with the directives of authority figures even when he does not understand what they are saying. The fact that Dr. Kirkland's evaluation merely required Humphrey to respond to prompting, rather than to independently summarize or explain concepts, means that it is difficult to determine how much of the conversation Humphrey actually understood. Accordingly, the court concludes by a preponderance of the evidence that Humphrey is not competent to stand trial at this time. The court finds that he does not have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

## B. Restoration Commitment

Once a defendant has been found incompetent to stand trial, the court must order, pursuant to 18 U.S.C.

§ 4241(d)(1), that the defendant be committed to the
Attorney General for hospitalization until it can be
determined whether a substantial probability exists
that within the foreseeable future the defendant will
regain the capacity to be tried. *See United States v.
Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990).
Section 4241(d)(1) limits the defendant's confinement
to four months, and any additional period of
confinement depends upon the court's finding there is a
substantial probability "that within the additional
time he will attain capacity to permit trial, 18 U.S.C.
§ 4241(d)(2)(A), or if he is found to create a
substantial risk to himself and to others, pursuant to
18 U.S.C. § 4246." *Id.* at 1303.

Pursuant to § 4241(d)(1), the court will order that
Humphrey be committed to the custody of the Attorney
General for a reasonable period of time, not to exceed
four months, so that the Federal Bureau of Prisons
(BOP) can determine whether there is a substantial
probability that in the foreseeable future Humphrey

12

will attain the capacity to permit the criminal proceedings against him to go forward.

The court will further order that, once a determination is made as to whether Humphrey can be restored and before the expiration of the four-month statutory period, BOP is to prepare and file a psychological report with this court.  This report should summarize the course of Humphrey's evaluation and treatment.  It should also state BOP's findings, opinions, and conclusions regarding Humphrey's attainment of competency to proceed in this case, including whether BOP believes that there is a substantial probability that Humphrey will, in the foreseeable future, attain the capacity to permit the trial to proceed.  Once the court receives this report, it will determine whether Humphrey's commitment period needs to be extended pursuant to 18 U.S.C. § 4241(d)(2) for an additional reasonable period until his mental condition is so improved that trial may proceed.

* * *

Accordingly, it is ORDERED as follows:

(1) It is declared, pursuant to 18 U.S.C. § 4241(d), that defendant Keyiwan Rechard Humphrey is currently mentally incompetent to stand trial in this case--that is, he is currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist in his defense.

(2) Pursuant to 18 U.S.C. § 4241(d)(1), defendant Humphrey is committed to the custody of the Attorney General for such reasonable period of time, not to exceed four months from the date of his admission to the appropriate federal mental-health facility, as is necessary for the Federal Bureau of Prisons (BOP) to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed.

(3) No later than four months from the date of defendant Humphrey's admission to the appropriate

**14**

federal mental-health facility, the examiners designated to conduct or supervise his treatment shall file with this court and counsel of record a written psychological report. The report shall summarize the course of defendant Humphrey's evaluation and treatment. It shall also state BOP's findings, opinions, and conclusions regarding defendant Humphrey's attainment of competency to proceed in this case, including whether BOP believes that there is a substantial probability that defendant Humphrey will, in the foreseeable future, attain the capacity to permit the trial to proceed.

(4) Defendant Humphrey is directed to self-surrender, by no later than 5:00 p.m. on April 23, 2021, to the facility designated by BOP for his evaluation and treatment. This directive and date are based on the assumption that BOP will have designated the facility by then and that defendant Humphrey can make private arrangements to travel to the facility. If BOP has not made the designation and/or defendant

15

Humphrey is unable to make such arrangements, he should so inform the court at least a week before the surrender date.

DONE, this the 22nd day of March, 2021.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE